UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AYOUB B. F.,[1]

      Petitioner,

      v.

CHRISTOPHER CHESTNUT, et al.,

      Respondents.

No. 1:26-cv-00392-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner Ayoub B. F.'s ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) Respondents filed an answer. (ECF No. 11.) Petitioner filed a traverse. (ECF No. 12.) Neither party requested a hearing. (ECF Nos. 11, 12.) For the reasons set forth below, the Petition is GRANTED.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner is a native and citizen of Iran and an asylum applicant in the United States. (ECF No. 1 at 2.)  On July 17, 2024, Petitioner entered the United States with his wife, using their CBP One Appointment to request asylum, and they were apprehended by immigration authorities. (*Id.*)  Petitioner demonstrated a credible fear of persecution if he returned to his home country. (*Id.*)  Petitioner was then released on parole in August 2024.  (*Id.*)

During Petitioner's parole, he duly reported to his immigration check-ins.  (*Id.*) Nevertheless, on October 14, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner at a scheduled check-in appointment.  (*Id.* at 3.)  Petitioner was not provided with any notice, explanation, a warrant, or opportunity to be heard as to his detention.  (*Id.*) Petitioner requested a bond hearing, which was denied by an immigration judge for lack of jurisdiction.  (ECF No. 1-4.)  Petitioner was detained without a hearing for almost three months. (*See* ECF No. 1 at 3.)

On January 16, 2026, Petitioner challenged the lawfulness of his civil detention through the Petition and a Motion for Temporary Restraining Order ("TRO"). (ECF Nos. 1, 5.)  On January 22, 2026, the Court found Petitioner was likely to succeed on his claims that his detention violated the Fifth Amendment Due Process Clause and ordered Petitioner's release.  (ECF No. 8.) The Court now considers the Petition on the merits.

## II.  STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

---

[2]   The facts are not disputed.

2

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.[3]  (ECF No. 1 at 10–12.)  Respondents only argument in opposition is Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (ECF No. 11 at 3.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.    Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he

---

[3]    In addition to procedural due process, Petitioner also alleges Respondents violated substantive due process, 8 C.F.R. §§ 241.4(l) and 241.13(i), and the standard for conditions of confinement.  (ECF No. 1 at 11, 12–13.)  The Court finds it need not address Petitioner's additional claims to rule on the Petition, as they seek the same relief already warranted under the INA and procedural due process claims.

government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from custody on parole.  (ECF No. 1 at 2.)  Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release.  Respondents do not dispute that Petitioner complied with the conditions of his release.  (*See generally* ECF No. 11.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b).  Section § 1225(b) mandates detention during removal proceedings for applicants for admission and does not provide for a bond hearing.  Conversely, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel

4

and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Until the U.S. Department of Homeland Security ("DHS") changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

Courts across this Circuit, including this one, have overwhelmingly rejected Respondents' legal position and have found DHS's new policy unlawful. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS July Policy for a nationwide certified class).

Petitioner asserts § 1226(a), not § 1225(b)(2), governed his detention. (ECF No. 12 at 8.) This Court agrees. Section 1225(b)(2) applies only to "applicants for admission" "seeking admission" — a category that does not include noncitizens like Petitioner who already entered the United States and was residing here at the time of his re-detention. *See Morales-Flores*, 2025 WL 3552841, at *3. Thus, Petitioner is not an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Petitioner was instead subject to § 1226(a) and was entitled to the process that statute requires, including a bond hearing at a minimum. Therefore, Petitioner had a liberty interest protected by due process.

### B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As

discussed above, Petitioner was out of custody for over a year and had built a life with his family. Because of his detention, he is experiencing many of the deprivations of incarceration, including loss of contact with family, loss of income, lack of privacy, and lack of freedom of movement. (ECF No. 12 at 9.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-deprivation; he did not receive notice, warrant, custody determination hearing, nor a bond hearing. (ECF No. 1 at 3.) Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's immigration proceedings are still pending and there is no final order of removal. Additionally, Petitioner asserts that he complied with all conditions of his release. (ECF No. 1 at 3.) Indeed, his arrest was the direct result of his compliance, occurring at a routine ICE check-in. (*Id.*) Moreover, prior to releasing Petitioner on parole, DHS would have determined that Petitioner was not a danger to the community nor a flight risk. In the subsequent year and a half, Petitioner's conduct of compliance only bolsters those findings. Respondents do not argue otherwise. Therefore, Respondents had no legitimate interest in detaining Petitioner.

Additionally, the cost and time of procedural safeguards are minimal here. Notice and

6

custody determination hearings are routine processes for Respondents.  Indeed, these are the very processes owed to Petitioner under § 1226(a).  It is also less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide."  *Id.* at 129.  Here — where Petitioner has substantially complied with the conditions of his release, he was determined to be not a danger or flight risk, and there is no final order of removal — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.  Further, Respondents have not provided any substantive opposition to the contrary.  (*See* ECF No. 11.)

Respondents did not provide either notice or a pre-deprivation hearing.  Nor did Respondents provide a post-deprivation hearing over three months of detention.  Respondents violated Petitioner's procedural due process rights.  Therefore, the Court GRANTS the Petition.  (ECF No. 1.)

IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and

convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

3. The Clerk of Court is directed to update the docket to only list Petitioner's first name and last initial.

4. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: February 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE